UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KEVIN R. HALL,                )
                              )
    Plaintiff,                )
                              )
v.                            )  2:10-cv-00503-DBH
                              )
UNITED STATES OF AMERICA,     )
                              )
    Defendant                 )

**RECOMMENDED DECISION**

On December 7, 2010, Kevin Hall filed a pleading self-described as an "Emergency Motion to Grant Injunctive Relief and Compel Federally Contracted Community Corrections Facility to Obtain Immediate Emergency Medical Services on Behalf of Petitioner." The emergency motion was not accompanied by a complaint or other document that plainly identified the jurisdictional basis for this court's involvement, but I construed the pleading as being in the nature of a 28 U.S.C. § 2241 petition by a federal prisoner complaining about the authorities' deliberate indifference toward his serious medical needs.

It is undisputed that Kevin Hall has an infected tooth that must be extracted. It is also undisputed that Kevin Hall is currently living in Maine under home confinement outside of a correctional facility until January 31, 2011, when he will be released from the Bureau of Prisons' custody to begin serving the supervised release portion of his sentence.

When Hall began this legal proceeding he was housed at a halfway house in Portland. According to Hall's complaint, on November 10, 2010, after being told by the personnel at the halfway house that he should seek medical attention independent of their intervention, Hall visited the Emergency Room at Mercy Hospital because of tooth pain. Mercy Hospital

personnel provided him with painkiller medication and informed him that they were not staffed to perform dental or oral surgery services. Hall then scheduled an appointment with Dr. Pamela Anzelc, D.D.S. On November 17, 2010, Anzelc examined Hall, took x-rays, and recommended immediate medical attention by an oral surgeon. Hall was told by the halfway house personnel to find out what medical facility could perform the necessary surgery and to obtain estimates of costs to submit to the Bureau of Prisons. Hall tried a couple of options, including Maine Care and the Emergency Room at Maine Medical Center, but could not find a facility to perform the surgery at no cost. At this juncture, Hall filed his "emergency motion" with the court.

On December 8, 2010, I ordered the Bureau of Prisons to answer the motion by December 20, 2010. I also ordered that service be made upon the halfway house. In its response, the Bureau of Prison submitted documentation suggesting that the treatment was medically necessary and that extraction costs up to $400 had been approved. (Doc. No. 5-6.) On December 22, 2010, Hall transferred to home confinement. The Bureau of Prisons has never issued a specific payment authorization to any private provider and Hall has been unable to have the tooth extracted in the community. Hall has indicated to the court and the BOP that the anticipated costs would be approximately $1,000.

At this point it appeared to me that the halfway house no longer had anything to do with the availability of medical treatment and that the necessary parties to this proceeding were the BOP and Kevin Hall. I arranged a telephone conference to discuss the status reports filed by the BOP and Hall. While Hall remains in federal custody, the BOP has proposed that the extraction take place at FMC Devens on an expedited basis. During the telephone conference that I held on today's date (January14, 2011) Kevin Hall rejected that proposal, asserting that a return to federal custody, even for a brief period, would be traumatic and cause him grave emotional

2

distress. Based upon the exhibit filed by the United States it appears that the BOP is ready and willing to resolve Hall's situation by an in-person evaluation and treatment. (Doc. No. 13-1.) Hall disputes the Bureau's analysis and claims that its offer is intended to be punitive because he chose to exercise his right to petition the court.

**DISCUSSION**

While I am sympathetic to Hall's plight and I appreciate his argument that he has received the "run around" from both the halfway house and the Bureau of Prisons, I do not believe that this court, given the present record, has the legal authority to order a specific course of medical action. Both the halfway house and the BOP argue primarily that Hall has failed to exhaust available grievance procedures pursuant to 42 U.S.C. § 1997e. I am not completely convinced by that argument, given the apparently favorable administrative rulings authorizing payment that Hall originally received, the "emergency" nature of his condition, and inferences that might be drawn about an evasive approach to his treatment in view of Hall's looming release date and the intervening change in custodial status. I am not sure about the applicability of prison grievance procedures to a case in this posture and believe it to be a highly unique situation.

However, there are two overriding legal principles which guide my conclusion as to the resolution of this matter. First, as to the halfway house, the answer as to whether or not it responded appropriately to this situation between November 10 and December 22, 2010, is not relevant in terms of Hall's current status and his ongoing need for medical treatment. Accordingly, I would recommend that the halfway house be dismissed from the action because the complaint for emergency treatment is moot as to it.[1]

---

[1] Believing he has some sort of claim for civil damages against the halfway house, during the telephone conference Hall urged that I make a declaratory finding that their conduct was improper. He sounded this theme in

3

Second, as to the Bureau of Prisons, this court's role in addressing a prison conditions complaint such as this one is to insure that prisoners committed to the custody of the United States receive necessary medical treatment for serious medical needs. This inquiry is necessarily framed by the Eighth Amendment cruel and unusual punishment inquiry. See generally Farmer v. Brennan, 511 U.S. 825 (1994). While I understand Hall's outrage at the prospect of returning to custody in order to have his tooth extracted -- probably a forty-five minute procedure -- I am unable to say that the proposal put forth by the Bureau of Prisons is unconstitutional. The BOP's responsibility for Hall's dental problem arises because he is in its custody. It is not totally unreasonable for it to want to monitor and control the costs and quality of any care that is provided. Hall has chosen to reject its proposal and that is his choice. His remedy is to make his own arrangements to have his tooth extracted.

**Conclusion**

Based upon the foregoing I recommend that the motion as to Halfway House, Inc. be dismissed as moot and that the emergency motion for injunctive relief as to the Bureau of Prisons be denied because the petitioner has simply failed to make the necessary showing that he is entitled to immediate injunctive relief in light of the Bureau of Prison's position that it stands ready to provide treatment for the dental problem on an expedited basis prior to January 31, 2011.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

his status report as well. (Doc. No. 12, at 3.) I decline the invitation.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 14, 2011